UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JANICE K. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CV-421 |
| | ) | (VARLAN/SHIRLEY) |
| CONSOLIDATED PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

Plaintiff Janice K. Taylor ("Plaintiff Taylor") filed the present civil action against Defendant Consolidated Products, Inc. ("Defendant CPI"), alleging violations of the Americans with Disabilities Act ("ADA"). Defendant CPI filed a motion for summary judgment [Doc. 40], which is now ripe for determination. The Court has carefully considered the parties' briefs and supporting materials [Docs. 40, 41, 51, 55] in light of the entire record and controlling law. For the reasons set forth herein, Defendant CPI's motion for summary judgment [Doc. 40] will be denied.

**I.     RELEVANT BACKGROUND**

Defendant CPI, a printing and software services company, employed Plaintiff Taylor as a Human Resources ("HR") Manager from January 31, 2005, to July 10, 2006. [Docs. 51-17 at 2, 41-1 at 22.] Her HR responsibilities included interviewing, training, hiring, and handling compliance and benefits administration. [Doc. 41 at 6, 11.] Mr. Philip Kirk Icuss ("Mr. Icuss") is one of Defendant CPI's shareholders, along with Tony Patton ("Mr. Patton")

and David McAllister ("Mr. McAllister"). [Doc. 41 at 5, 8.] Messrs. Icuss, Patton, and McAllister made the decision to contract Plaintiff Taylor as a consultant to assist with HR in 2004 and hired her as a permanent employee with a salary of $60,000 per year in January of 2005. [Docs. 41-1 at 9, 10; 51-21.] Prior to the contracting and hiring of Plaintiff Taylor, the shareholders shared the HR responsibilities with some of Defendant CPI's employees, primarily Ray Phillips ("Mr. Phillips") and Sharon Essary ("Ms. Essary"). [Doc. 41-1 at 11.]

In the spring of 2005, Plaintiff Taylor had a bony protrusion develop on her left foot that allegedly caused pain when walking, standing, and climbing stairs. [Doc. 51-1 at 2.] Due to this condition, Plaintiff Taylor underwent foot surgery on August 10, 2005. [Doc. 41-7 at 21; 51-1 at 3.] According to Mr. Icuss, Plaintiff Taylor previously discussed with him that it would likely take months for her to recover from surgery. [Doc. 41-1 at 33.] Plaintiff Taylor resumed working full-time from home a few weeks after her surgery. [Docs. 41-2 at 35; 51-1 at 3.] In September of 2005, Plaintiff Taylor attempted returning to work at her upstairs office in Defendant CPI's offices, but she was allegedly unable to do so because of pain and swelling. [Doc. 51-1 at 3-4.]

According to Plaintiff Taylor, she requested a first floor office on July 12, 2005, August 23, 2005, and September 14, 2005, but allegedly received no response from Defendant CPI or Mr. Icuss, her superior. [Doc. 51-1 at 3, 4.] According to Mr. Icuss, there were "plenty of conversations and emails" after Plaintiff Taylor's surgery about the downstairs office, and he had no objection to her working from a downstairs office. [Doc. 41-1 at 34.] In light of her condition, Mr. Icuss allegedly offered Plaintiff Taylor the option

to work from home rather than coming into the office and had "numerous discussions about staying home if she didn't feel well, and not trying to come in, to let her foot get better rather than to keep aggravating it." [Doc. 41-1 at 34.] During this time, Plaintiff Taylor either worked from home or in a conference room located on the first floor of Defendant CPI's offices. [Docs. 41-1 at 25, 33; 41-2 at 35; 51-1 at 4.] Because the conference room was allegedly not secured, personnel files remained in one of Defendant CPI's upstairs offices. [Doc. 41-2 at 38.] When Plaintiff Taylor needed an employee's file, someone else would have to get the file for her unless she went upstairs to get the file herself. [Doc. 41-2 at 38.]

On October 17, 2005, Plaintiff Taylor then returned to her upstairs office. [Docs. 51-40; 51-33 at 18.] However, she allegedly had difficulties with climbing stairs and experienced pain and swelling in her foot. [Docs. 51-24, 51-25, 51-26.] She alleges that she again unsuccessfully requested a first floor office from Mr. Icuss in January of 2006 and April 3, 2006. [Docs. 51-1 at 8; 51-29.] Around April 24, 2006, Plaintiff Taylor allegedly requested that her office be relocated downstairs and stated her belief that she was being discriminated against because her previous requests had been ignored. [Doc. 51-33 at 36.] Mr. Icuss then allegedly agreed to move her to a downstairs office in the warehouse previously occupied by Jay Fryman ("Fryman's old office") around April 24, 2006, though he allegedly "got really upset." [Docs. 41-1 at 35; 41-2 at 25; 51-1 at 9; 51-33 at 36.] According to Plaintiff Taylor, Fryman's old office had been vacant as early as July of 2005. [Doc. 51-1 at 3.] Though Plaintiff Taylor moved to Fryman's old office, the personnel files remained in the upstairs office allegedly due to security reasons. [Doc. 41-2 at 43.]

3

On July 10, 2006, Defendant CPI signed a separation notice that discharged Plaintiff Taylor. [Doc. 41-2 at 13.] For years, a company named LBMC provided Defendant CPI with accounting and payroll administration services. [Doc. 41-1 at 14, 16.] In August of 2005, LBMC held a seminar introducing its HR services to Defendant CPI, and Defendant CPI then requested a proposal from LBMC in October of 2005. [Docs. 41-1 at 16; 41-2 at 13.] After meeting with John LeFevre ("Mr. LeFevre") of LBMC on May 1, 2006, Mr. Icuss signed an agreement with LBMC to outsource certain HR duties on June 19, 2006, that became effective July 1, 2006. [Docs. 41-2 at 12; 51-12.] Plaintiff Taylor was allegedly discharged because "[w]e were able to outsource those functions for about half the cost that we were incurring for [Plaintiff Taylor's] full-time employment." [Doc. 41-1 at 13.] Mr. Icuss denies that the discharge decision was due to her health condition, inability to climb stairs, or her physical therapy appointments. [Doc. 41-1 at 14.] According to Mr. Icuss, he did not offer Plaintiff Taylor continued employment at reduced pay because LBMC recommended a "clean break" with her. [Doc. 41-1 at 14.] In December of 2007, the HR outsourcing contract with LBMC expired and was not renewed. [Doc. 51-3 at 29.] Defendant CPI's HR duties were then handled by Ms. Essary and the shareholders "in-house." [Doc. 41-1 at 17.]

On November 7, 2007, Plaintiff Taylor filed her initial pro se complaint against Defendant CPI, which was subsequently amended after she obtained counsel. [*See* Docs. 1, 36, 50.] In her amended complaint, she alleges that Defendant CPI discriminated and retaliated against her in violation of the ADA. [*See* Doc. 50.] Defendant CPI has now

4

submitted a motion for summary judgment to the Court, which contends that it is entitled to judgment as a matter of law. [Doc. 40.]

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words,

5

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III. ANALYSIS

Plaintiff Taylor asserts three claims under the ADA: (1) a reasonable accommodation claim; (2) a disability discrimination discharge claim; and (3) a retaliation claim. [*See* Doc. 50.] In its motion for summary judgment, Defendant CPI contends that there are no genuine issues of material fact as to these claims and that it is entitled to judgment as a matter of law. In light of the law applicable to this case, the Court will address Defendant CPI's arguments as to each claim in turn.[1]

---

[1] The Court notes that the ADA Amendments Act of 2008 ("ADAAA") took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008). In *Landgraf v. USI Film Prods.*, the Supreme Court set forth a test for when a statute is to be applied retroactively, which involves whether the statute expressly provides for retroactive application. 511 U.S. 244, 280 (1994). In light of *Landgraf* and the absence of retroactive language in the ADAAA, several federal courts have interpreted these amendments as not applying retroactively and have instead applied "the laws and interpretations that were in force when the complained-of acts occurred." *Kiesewetter v. Caterpillar, Inc.*, 295 F. App'x 850, 851 (6th Cir. 2008); *see also EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488, 492 n.2 (6th Cir. 2008); *Fournier v. Payco Foods Corp.*, Civil No. 07-1667, 2009 WL 1164540, at *5 n.9 (D.P.R. May 1, 2009) (holding that Congress did not manifest a clear intent for the ADAAA to apply retroactively), *White v. Sears, Roebuck & Co.*, No. 07-CV-4286, 2009 WL 1140434, at *5 (E.D.N.Y. April 27, 2009) ("There is no language suggesting the Act applies to conduct prior to the effective date of the 2008 Amendments."); *but see Jenkins v. Nat'l Bd. of Med. Exam'rs*, No. 08-5371, 2009 WL 331638, at *1-2 (6th Cir. Feb. 11, 2009) (holding that the ADAAA applied to a plaintiff seeking prospective relief). The present case is more analogous to those cases that have not applied the ADAAA retroactively because Plaintiff Taylor essentially seeks relief for events that occurred years before the ADAAA was enacted. *Geiger v. Pfizer, Inc.*, No. 2:06-CV-636, 2009 WL 973545, at *2-3 (S.D. Ohio Apr. 10, 2009). The relief Plaintiff Taylor seeks is "quintessentially backward looking" and "would attach an important new legal burden to [past] conduct." *Jenkins*, 2009 WL 331638, at *2 (alteration in original) (citing *Landgraf*, 511 U.S. at 282-83). Thus, the Court will not apply the ADAAA retroactively and will, instead, apply the law and interpretations that were in force at the time of the complained-of acts in this case.

6

### A. Reasonable Accommodation

For her reasonable accommodation claim, Plaintiff Taylor contends that Defendant CPI failed to provide her "reasonable accommodation for her disability when she was refused the opportunity to move to an available downstairs office and when, after she was moved to a downstairs office, she was not permitted to store files important to her work in her office." [Doc. 50 at 5.] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In defining the term "discriminate," the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

To make a prima facie showing for a reasonable accommodation claim, a plaintiff bears the burden of establishing (1) that he or she is disabled and (2) that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation; and (3) that he or she was denied a reasonable accommodation. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007); *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). The employer then bears the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer. *Kleiber*, 485 F.3d at 869. Notably, "[a]n ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citations omitted). Additionally, "an employee cannot force [his] employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Id.* (citation omitted). Furthermore, "[i]f an employee rejects a reasonable accommodation, the individual is no longer considered a 'qualified individual with a disability.'" *Id.* (citation omitted).

In this case, Defendant CPI first challenges whether Plaintiff Taylor can establish the first prima facie element that she is "disabled." The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an

8

impairment." 42 U.S.C. § 12102(2). In its motion for summary judgment, Defendant CPI contends that Plaintiff Taylor was not substantially limited in one or more major life activities and points to her ability to perform various tasks, such as her return to working upstairs at Defendant CPI's offices, her ability to drive and walk around Defendant CPI's business premises, her attendance at business and social events, her ability to fully perform her job duties, her travels while on vacation, and her ability to do personal chores. Plaintiff Taylor responds that there is a genuine issue of material fact because her foot condition substantially limited her ability to walk, stand, and perform other major life activities. She also contends that she has satisfied the "disabled" element because of evidence that Defendant CPI "regarded" her as disabled.

As to Plaintiff Taylor's "regarded-as" claim, an individual may be "regarded as" disabled when (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more of an employee's major life activities. *Talley*, 542 F.3d at 1106 (citing *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999)). Thus, the "regarded-as-disabled" definition of disability applies to situations where employees are "perfectly able" to perform a job, but they are "rejected . . . because of the 'myths, fears and stereotypes' associated with disabilities." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (alterations in original) (citations omitted).

9

In *Talley*, a plaintiff asserted that she satisfied the "regarded-as prong" because her supervisors and co-workers "testified that they recognized her obvious discomfort when she was working at her register." 542 F.3d at 1106. However, the Sixth Circuit held "[t]hat the defendants and other co-workers recognized that [the plaintiff] had severe health problems and physical impairments does not satisfy the regarded-as prong." *Id*. Instead, the plaintiff had to show "(1) that the defendants mistakenly believed that she had a limiting impairment when in fact she did not or (2) that the defendants believed she had a limiting impairment when that impairment, in fact, was not so limiting," which she failed to do. *Id.*

In this case, Plaintiff Taylor points to statements by Mr. Icuss that she had "bad days" where she could not come into work and that she was "too swollen and hurting to come to work" on those days. [Doc. 51-3 at 34-36.] However, even when construing this evidence in a light most favorable to Plaintiff Taylor, such evidence simply fails to establish any "mistaken" belief by Defendant CPI. *See Gruener*, 510 F.3d at 664-65 (discussing how the regarded-as prong required evidence that Defendant CPI "entertained misperceptions" about her). Mr. Icuss's understanding of Plaintiff Taylor's "bad days" resulted from her own communications to him that she would not come to work on those days or would not be able to climb stairs due to her foot condition. *See id.* at 665 (finding that a plaintiff's regarded-as-disabled claim completely lacked proof when she admitted that her employer's "understanding of her impairments and how they limited her simply tracked the specific and valid restrictions prescribed by her own doctor").

10

Though Plaintiff Taylor relies on *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001), for the proposition that the "regarded-as" prong of disability is satisfied if there evidence of pretext, the Court notes that *Ross* is distinguishable because, in addition to the evidence of pretext, there was evidence of a series of comments and reports from the employer indicating that it thought the plaintiff was disabled, as well as a memo referring to the plaintiff as a "back case." *Id.* at 709; *see also Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 600 (6th Cir. 2002) (distinguishing *Ross* based on the "compelling" evidence in that case); *Cannon v. Levi Strauss & Co.*, 29 F. App'x 331, 336 (6th Cir. 2002) (distinguishing *Ross* based on the series of comments and reports in that case indicating a view through stereotypes of an impairment). Unlike in *Ross*, there is a lack of evidence that Defendant CPI viewed Plaintiff Taylor through analogous "stereotypes based on her impairment." *Cannon*, 29 F. App'x at 336. As a result, there is simply insufficient evidence of a mistaken belief on the part of Defendant CPI, and the evidence relied upon only speaks to Plaintiff Taylor's actual inability to perform certain activities that she communicated to Defendant CPI. *See Gruener*, 510 F.3d at 665. As a result, Plaintiff Taylor has failed to establish "disability" under the "regarded-as" prong.

Alternatively, Plaintiff Taylor argues that there is a genuine issue of material fact regarding whether she is disabled because of a "physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A). According to the regulations from the relevant period, the term "substantially limits" means: "(i) Unable to perform a major life activity that the average person in the general population

11

can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). "Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Factors to be considered in determining whether an individual is substantially limited in a major life activity include (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 581-82 (6th Cir. 2007); 29 C.F.R. § 1630.2(j)(2).

In this case, Plaintiff Taylor contends that she has created a genuine issue of material fact regarding her actual disability. She has submitted an affidavit, which states that she was substantially limited in the activities that involved standing, walking, and using her left leg from late August of 2005 through May of 2006. [Doc. 51-1 at 5.] Her affidavit also discusses her inability to perform or restrictions from activities like walking, personal care, household chores, retrieving mail, preparing meals, grocery shopping, and participating in social activities during that period. [Doc. 51-1 at 5.] In its motion for summary judgment, Defendant CPI contends that Plaintiff Taylor was not "disabled" in light of her deposition testimony indicating that she was able to drive to the convenience store and pick up items as needed, to bathe herself, to clothe herself, to go out and attend social events, to take a two-

12

week vacation in Florida, to drive to work and physical therapy appointments, to perform some laundry, and to walk around Defendant CPI's offices as needed. [Doc. 41-4 at 39-41.] However, Plaintiff Taylor also testified that she remained "limited" in these activities. [Doc. 41-4 at 39-40.] For example, when attending a social event, Plaintiff Taylor remained seated and propped up her foot. [Doc. 41-4 at 40.] Additionally, though the anticipated duration of Plaintiff Taylor's recovery from her foot condition was anticipated to not last more than a few months, it is noted that improper healing can result in a long-term "impact" for purposes of a "disability" determination. 29 C.F.R. pt. 1630, App. § 1630.2(j). In her deposition, Plaintiff Taylor testified about her worsening condition during this same period and the desire of her physician to further restrict her from certain activities. [Doc. 51-33 at 36.] Thus, there is an issue of fact as to the duration and nature of Plaintiff Taylor's impairment and the impact of such impairment in light of evidence that her foot condition worsened during the relevant period. Despite the evidence cited by Defendant CPI, it is left for the finder of fact to weigh the evidence and determine whether Plaintiff Taylor is "disabled" within the meaning of the ADA.

Even if "disabled," Defendant CPI argues that it accommodated Plaintiff Taylor with unlimited time off and permission to work at home as needed. To the extent Defendant CPI points to the alternative accommodation of giving Plaintiff Taylor unlimited time off, the reasonableness of this alternative accommodation may be questioned in light of the evidence in the record. For example, Mr. Icuss testified that there were days where it "would be good" if Plaintiff Taylor attended meetings and functions at Defendant CPI's offices rather than

13

staying home. [*See* Doc. 41-1 at 37.] In an email, Mr. Icuss also stated that "[i]t is difficult to find things for you to do from home." [Doc. 51-38 at 1.] When construed in a light most favorable to Plaintiff Taylor, there are questions about how available and reasonable this option was for Plaintiff Taylor when this evidence suggests that her presence at the office was an important part of her job. Also, the Court notes that an accommodation may not be reasonable when employee may lose experience and skills during an extended leave from work. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 n.5 (6th Cir. 2000) (discussing the reasonableness of an accommodation where an employee sought an extended leave as an accommodation). Due to such evidence, the issue remains as to the reasonableness of this alternative accommodation.

Defendant CPI also argues that Plaintiff Taylor was immediately moved to Fryman's old office when she specifically requested a first floor office around April 24, 2006. In *Gerton v. Verizon South Inc.*, the Sixth Circuit determined that a plaintiff's reasonable accommodation claim was defeated when the employer provided her the only accommodation she ever specifically requested. 145 F. App'x 159, 168-69 (6th Cir. 2005). While it is undisputed that Plaintiff Taylor was eventually given a first floor office, there is disagreement as to whether a specific request was made prior to April 24, 2006. Defendant CPI contends that Plaintiff Taylor's previous requests were not specific because her email requests included language like "If this is not possible, no problem." [*see* Docs. 51-28; 51-29.]

Regardless of whether the email requests were sufficiently "specific," there is additional evidence that Plaintiff Taylor asked Mr. Icuss about getting a first floor office orally on July 12, 2005, and telephonically on October 17, 2005. [Doc. 51-33 at 15.] One could construe such testimony as establishing that Plaintiff Taylor made sufficiently specific accommodation requests during those conversations, which then raises the issue of whether the delay in granting the accommodation after those earlier requests was unreasonable. There is evidence that Fryman's old office was available as early as August 23, 2005, yet Plaintiff Taylor was not relocated until April 24, 2006. [*See* Doc. 51-28.] This evidence could suggest that the delay in providing a requested accommodation was not due to permissible reasons, like internal processing or events outside the employer's control, as discussed in *Gerton*, 145 F. App'x at 168. As a result, the Court declines to grant summary judgment on this claim at this time.

### B. Disability Discrimination Discharge

Like the reasonable accommodation claim, Plaintiff Taylor's disability discrimination claim, based on her discharge, falls within the scope of 42 U.S.C. § 12112(a). To recover for discrimination under the ADA, a plaintiff must show that (1) she is an individual with a disability; (2) she is otherwise qualified to perform the job requirements with or without reasonable accommodation; and (3) she was discriminated against solely because of the disability. *Talley*, 542 F.3d at 1105. "The third element requires that the plaintiff suffer an adverse employment action." *Id.* The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Id.* If the defendant can satisfy its

15

burden, the plaintiff must then show that the proffered explanation is a pretext for discrimination. *Id.*

The Court previously addressed the prima facie element regarding "disability" in analyzing Plaintiff Taylor's reasonable accommodation claim. The Court incorporates that analysis for purposes of her disability discrimination claim based upon her discharge by Defendant CPI. Thus, Plaintiff Taylor can proceed under the actual disability prong, but she cannot rely on the "regarded-as-disabled" prong for this claim. Assuming that Plaintiff Taylor has otherwise sufficiently established the prima facie case for her discharge claim, Defendant CPI has met its burden of offering a legitimate, non-discriminatory reason for the adverse employment action under the burden-shifting framework. *Id.* Namely, Defendant CPI outsourced Plaintiff Taylor's job function to a third-party contractor in order to save $30,000 per year.

The burden then shifts to Plaintiff Taylor to show that Defendant CPI's proffered reason is a pretext for unlawful discrimination. A plaintiff may establish pretext by showing "(1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motivate the actions; or (3) that the proffered reason was insufficient to motivate the actions." *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 662 (6th Cir. 1999). The first showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). For the second showing, a plaintiff "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was

16

*more* likely than that offered by the defendant." *Id.* (emphasis in original). In other words, "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* The third showing of pretext ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not subject to an adverse employment action even though they engaged in substantially identical conduct to that which the employer contends motivated a defendant's actions toward a plaintiff. *Id.*

In this case, when construed in a light most favorable to Plaintiff Taylor, the Court finds that there is sufficient evidence of pretext for her to overcome summary judgment on this claim. In his deposition, Mr. Icuss testified that LBMC recommended to him that Defendant CPI make a "clean break" with Plaintiff Taylor. [Doc. 41-1 at 14-15.] However, in an email dated June 29, 2006, Mr. LeFevre of LBMC wrote that Defendant CPI "want[s] to terminate the current HR Manager the second week of July." [Doc. 51-9.] Mr. LeFevre's email further states that "[e]mployees will be very happy when the current HR person is no longer there." [Doc. 51-9.] Mr. LeFevre's email could be construed as suggesting that the discharge decision as to Plaintiff Taylor was not based on the "financial reasons" relied upon by Defendant CPI in its summary judgment motion. Furthermore, one could construe an inconsistency between Mr. Icuss's testimony that it was LBMC's recommendation to discharge Plaintiff Taylor with a "clean break" and Mr. LeFevre's email, which could be interpreted as suggesting that it was Defendant CPI who initially wanted to discharge Plaintiff Taylor. There is also evidence that Mr. Icuss "got really upset" when Plaintiff

17

Taylor requested a downstairs office on April 24, 2006, and then met with Mr. LeFevre about potentially contracting HR services with LBMC a few days later on May 1, 2006. [Docs. 51-33 at 36; 51-6.] Though Defendant CPI contracted with LBMC for a lower cost, this fact does not necessarily defeat Plaintiff Taylor's claim if the true motivation for contracting with LBMC was due to Plaintiff Taylor's alleged disability. In light of the evidence discussed above, there is a genuine issue regarding whether Defendant CPI's proffered reason was merely pretextual, and summary judgment on this claim is not appropriate at this time.

### C. Retaliation

Plaintiff Taylor also alleges that Defendant CPI retaliated against her for engaging in a protected activity under the ADA. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish the prima facie case for disability retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that she suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). If the prima facie case of retaliation is established, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The plaintiff then "bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination." *Id.* (citation omitted). In this case, it is undisputed

18

that the protected activity at issue was Plaintiff Taylor's request for a reasonable accommodation.

For purposes of summary judgment, Defendant CPI also does not dispute that Plaintiff Taylor can establish the prima facie case for her retaliation claim. However, as with the discharge claim, Defendant CPI contends that Plaintiff's retaliation claim must fail because she was discharged as a result of a legitimate business decision and, therefore, cannot establish pretext. Again, assuming that Plaintiff Taylor has sufficiently established the prima facie case for this claim, Defendant CPI has proffered a legitimate, non-discriminatory reason. It asserts that it was less expensive to contract HR services with LBMC than to employ Plaintiff Taylor as HR manager.

As discussed previously in relation to her disability discrimination discharge claim, the burden then shifts to Plaintiff Taylor to show that Defendant CPI's proffered reason is a pretext for unlawful discrimination. A plaintiff may establish pretext by showing (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motivate the actions; or (3) that the proffered reason was insufficient to motivate the actions. *Hopkins*, 196 F.3d at 662. The Court finds that its prior discussion of pretext in relation to Plaintiff Taylor's disability discrimination discharge claim is also applicable to her ADA retaliation claim. In particular, there is evidence that Mr. Icuss reacted in an upset manner to Plaintiff Taylor's accommodation request to move to Fryman's old office and her claims of discrimination for not granting her earlier requests during their meeting in April of 2006. Considering the temporal proximity between this meeting and the meeting between Mr. Icuss

19

Case 3:07-cv-00421   Document 62   Filed 06/19/09   Page 19 of 20   PageID #: 926

and Mr. LeFevre a few days later, there is sufficient evidence of pretext for summary judgment purposes. [Docs. 51-33 at 36; 51-6.] Accordingly, the Court declines to grant summary judgment as to Plaintiff Taylor's ADA retaliation claim and leaves the issue of pretext for determination by the finder of fact.

## IV. CONCLUSION

For the reasons set forth herein, Defendant Consolidated Products, Inc.'s Motion for Summary Judgment [Doc. 40] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE
